**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2557-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

AMY L. AMKHANITSKY,

    Defendant-Appellant.

_____

Submitted August 16, 2022 – Decided August 23, 2022

Before Judges Accurso and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Accusation No. 21-04-0368.

Hegge & Confusione, LLC, attorneys for appellant (Michael J. Confusione, of counsel and on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Nancy A. Hulett, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

This appeal, which returns after remand, requires us to determine if the court's four-year custodial sentence was consistent with the Code of Criminal Justice. As we conclude the court failed to apply properly the aggravating and mitigating factors, we vacate defendant's sentence and remand the matter once again with directions that a different judge resentence defendant.

I.

In February 2020, defendant Amy L. Amkhanitsky, a then seventeen-year-old high school senior with no prior convictions or involvement with the criminal justice system, was driving on a dark road in Old Bridge. When approaching a crest in the road, she failed to observe Richard S. Lockwood, III, while he was walking in a crosswalk and fatally struck him with her car. The accident report noted the aforementioned peak in the road, and also detailed that the victim was not wearing reflective clothing and the crosswalk where he was hit was illuminated only on one side of the street.

Defendant immediately called 9-1-1 and when the police arrived, they did not observe her to be under the influence of any substance nor did they administer field sobriety tests. In addition, the police did not arrest defendant, and they did not issue her any summonses at the scene for driving while impaired, reckless driving, or for any other motor vehicle infraction. As

2

described in the presentence report, the police believed, however, that defendant had recently smoked marijuana, because an officer smelled "a strong odor of marijuana" while "standing by [defendant's] vehicle."

Despite defendant's consent to a blood test that night, the prosecutor nevertheless applied for a warrant for a blood draw which a motion judge granted. That test revealed defendant's blood contained 3.7 nanograms of tetrahydrocannabinol (THC)[1] metabolites. The results were reviewed by Dr. Robert Pandina, Ph.D., of Rutgers University who concluded defendant was intoxicated at the time of the accident.[2]

After her release from the hospital, defendant's parents brought her to the Old Bridge Police Station where she voluntarily provided a statement in which she admitted to taking two "hits" of marijuana from a vape pen approximately four hours before the accident. She also told the police she regularly smoked marijuana.

---

[1] THC or delta-9-tetrahydrocannabinol is "the main ingredient that produces the psychoactive effect" in marijuana. Marijuana, DEA (Aug. 2, 2022, 11:26 AM), https://www.dea.gov/factsheets/marijuana.

[2] We note that Dr. Pandina's findings are referenced in defendant's presentence report, but the record contains neither the test results nor his report. As such, the bases for his conclusion that defendant was intoxicated are unclear from the record.

3

Defendant voluntarily waived juvenile jurisdiction and her right to an indictment and was charged by way of accusation with third-degree strict liability vehicular homicide, N.J.S.A. 2C:11-5.3(a). Defendant was later indicted for first-degree aggravated manslaughter - extreme indifference to human life, N.J.S.A. 2C:11-4(a)(1), and two second-degree offenses: reckless vehicular homicide, N.J.S.A. 2C:11-5(a), and aggravated assault, N.J.S.A. 2C:12-1(b)(1).

Defendant subsequently pled guilty to the third-degree strict liability charge in exchange for the State's promise to recommend a five-year term of imprisonment and dismissal of defendant's first- and second-degree charges, while reserving her right to argue for a lesser sentence or a non-custodial probationary term.[3] During her plea, defendant admitted she was "under the influence of marijuana at the time that [she] impacted" the victim.

At sentencing, defendant stated that she understood the consequences of her actions and told the court she had "come to grips with what [she] did." She

---

[3] Under N.J.S.A. 2C:11-5.3(b), the presumption of non-imprisonment set forth in N.J.S.A. 2C:44-1(e) does not apply. Under the statute, "the court should weigh the aggravating and mitigating factors in determining whether to incarcerate the defendant or to place him or her on probation." State v. Baylass, 114 N.J. 169, 177 (1989). Where a term of imprisonment is deemed appropriate, the sentence for third-degree crimes "shall be between three and five years." N.J.S.A. 2C:43-6(a)(3).

also understood "being sorry isn't going to bring anyone back or reverse time," but emphasized the medical treatment she was receiving "to avoid this from ever happening again to anyone." She also explained, after questioning from the court, that she was using marijuana prior to the accident to ease her anxiety.

The court found applicable a single aggravating factor — nine, N.J.S.A. 2C:44-1(a)(9) ("[t]he need for deterring the defendant and others from violating the law"). Conversely, it determined the facts and circumstances warranted application of five mitigating factors — seven, N.J.S.A. 2C:44-1(b)(7) ("[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense"), eight, N.J.S.A. 2C:44-1(b)(8) ("[t]he defendant's conduct was the result of circumstances unlikely to recur"), nine, N.J.S.A. 2C:44-1(b)(9) ("[t]he character and attitude of the defendant indicate that the defendant is unlikely to commit another offense"), twelve, N.J.S.A. 2C:44-1(b)(12) ("[t]he willingness of the defendant to cooperate with law enforcement authorities"), and fourteen, N.J.S.A. 2C:44-1(b)(14) ("[t]he defendant was under 26 years of age at the time of the commission of the offense"). After ostensibly weighing these factors, the court sentenced defendant to a four-year custodial term.

In discussing the mitigating factors, the court acknowledged that defendant was merely seventeen years old when she made a "mistake." It also found that based on her character and attitude she was unlikely to make such a tragic error in the future. The court nevertheless concluded that although the "mitigating factors are real when evaluated cumulatively, . . . they d[id] not have enough impact upon this [c]ourt to outweigh the seriousness of the crime and to downgrade this sentence to a probationary term." The court also noted that it had an obligation "to send a strong and consistent message to the community at large, in an effort for general deterrence, that driving under the influence of any drug, is a very serious matter."

Defendant moved for reconsideration and primarily argued that the court failed to consider mitigating factor ten, N.J.S.A. 2C:44-1(b)(10), that defendant was "particularly likely to respond affirmatively to probationary treatment." The court agreed that it "did not properly consider . . . mitigating factor [ten]" and held a second sentencing hearing on October 21, 2021.

At her resentencing, defendant read another statement to the court, in which she readily admitted that "because of [her] actions an innocent man lost his life." Defendant also explained her background as a child of Soviet Union refugees, and the academic pressures she faced in a highly competitive high

school. She cited her mental health struggles and stated that she "couldn't get out of bed for months" after the accident. She also began to fail classes, developed "severe [Post-Traumatic Stress Disorder] (PTSD)," and suffered from "panic attacks any time [she was] in or near a car." She told the court that under the circumstances, she believed she did not "belong in jail" and revealed that she began therapy with a psychiatrist immediately after the accident and enrolled in college where she had successfully completed honors classes.

The court criticized defendant's statement, characterizing it as "all about her" as she failed to appreciate "the nature of the crime and the harm that was caused." The court explained that had defendant made such comments at her initial sentencing hearing, it "doubt[ed] [it] would have found the mitigating factors [it] found" but would "not go[] back on that." The court found "that there is clearly an individual need to deter this defendant from further criminal activity."

The court again applied aggravating factor nine, and mitigating factors seven, eight, nine, twelve, and fourteen, and concluded mitigating factor ten applied, but declined to revise defendant's sentence. It later issued an amended judgment of conviction reflecting its consideration and application of mitigating factor ten and affirming defendant's four-year custodial sentence.

A-2557-21

Defendant appealed and maintained the court improperly balanced the aggravating and mitigating factors and failed to apply the analysis mandated by our Supreme Court in State v. Fuentes, 217 N.J. 57, 63 (2014). We considered the matter on our Excessive Sentencing Calendar and remanded, concluding that the sentencing court "did not provide a sufficient explanation as to how [aggravating factor nine and mitigating factor eight] can be reconciled in this particular case as required by Fuentes." State v. Amkhanitsky, A-3528-20 (App. Div. Dec. 6, 2021) (slip op. at 3).

We further explained that "while the court expressed sound reasons" for the need to deter the general public from driving under the influence, "the court's analysis of a need to deter defendant herself from repeating [her] illegal conduct is limited and arguably contradictory." Ibid. We acknowledged, however, that we did not have a transcript of the October 21, 2021 sentencing hearing. Id., slip op. at 2. On remand, we instructed the court to reconsider defendant's sentence in accordance with Fuentes, evaluate defendant's presentence report, and "duly take into account any favorable or unfavorable developments respecting defendant's confinement and treatment since the time of her original presentence report." Id., slip op. at 4.

Defendant thereafter moved before us for further relief. State v. Amkhanitsky, A-3528-20 (App. Div. Jan. 11, 2022). Specifically, defendant requested an order requiring that the resentencing hearing be conducted no later than January 31, 2022 and that the matter be assigned to a different judge. Id., slip op. at 1.

The sentencing court also sought guidance from us regarding "the necessity of a resentencing hearing" based on its perception that it addressed the concerns identified in our December 6, 2021 order at the October resentencing hearing. Ibid. We ordered that defendant be resentenced no later than February 15, 2022, but concluded it was unnecessary to remand the matter to a different judge. Id., slip op. at 3.

We also found, having reviewed the October 21, 2021 transcript, that the issues requiring a remand were not resolved at that hearing. Id., slip op. at 2. We directed that the court clarify whether it intended to retract its application of mitigating factor eight and provide appropriate reasoning, and further explain its assessment and weighing of mitigating factor fourteen in light of the presentence submission and the report of Dr. Hasan Memon, M.D., that "illuminat[ed] [defendant's] mental health and her substance dependency" in relation to "other twelfth-graders of her age." Id., slip op. at 3. On the latter

A-2557-21

point, Dr. Memon opined that "6.9 percent of [twelfth] graders struggled with daily use of cannabis, just like [defendant]" and, as such, "at least 6.9 percent of [twelfth] grade Americans . . . would have tested positive for cannabis in their system after a car accident."

Defendant was resentenced on February 10, 2022. At that hearing, the court noted that it had reviewed our December 6, 2021 order, as well as character letters submitted by defendant, and considered Dr. Memon's report. The court also reevaluated defendant's statements at the previous sentencing hearings, and although it found that her initial statement expressed remorse and empathy, it reiterated its opinion that her October 21, 2021 comments improperly focused on the harm she suffered which the court characterized as reflecting "self[-]absorption."

The court again concluded that aggravating factor nine applied "with significant weight." In doing so, the court criticized Dr. Memon's opinion as "normaliz[ing] criminal behavior," and challenged his finding that because 6.9 percent of high school seniors smoked marijuana regularly, "at least 6.9 percent of [twelf]th grade Americans . . . would have tested positive for cannabis in their system after a car accident."

The court further concluded that Dr. Memon's diagnosis of Attention Deficient Hyperactivity Disorder (ADHD) and PTSD, together with defendant's history of "self[-]medicating," supported its finding that defendant presented a risk for reoffending. As such, the court added aggravating factor three, N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that the defendant will commit another offense") finding "a meaningful risk of re-occurrence . . . because the defendant's treatment has not yet matured."

As to the mitigating factors, the court rejected its previous application of mitigating factors eight and nine as a "mistake." The court found defendant's conduct to be the "result of mental health or emotional issues" that remained unresolved, and insufficient time had passed for her to demonstrate "the discipline to take her medication regularly." Further, the court explained, "the nature of the crime she committed can easily be replicated even with strict conditions placed upon her."

The court also retracted its application of mitigating factor ten, finding that "in light of the risk of [defendant] committing another offense, she is not particularly likely to respond affirmatively to probation since one of the key conditions of probation is to remain offense free." The court applied "medium weight" to factor seven, and "light weight" to factor twelve. It also applied

mitigating factor fourteen again, giving it "heavy weight" and attributing the accident to "youthful errors."

The court reimposed the four-year sentence despite its conclusion that the aggravating and mitigating factors were "in equipoise."  This appeal followed.[4]

II.

Before us, defendant argues that the court committed multiple sentencing errors and asks that we accordingly vacate her sentence.  She asserts that the court failed to "apply [an] objective assessment of the aggravating and mitigating factors" and instead, attempted to "justify imposing the same four[-]year sentence."

Specifically, defendant maintains that the court erred by applying aggravating factor three.  She explains that "[n]othing occurred between the first sentencing and resentencing that supports a finding of aggravating factor [three] now when it was not supported before."  Further, she argues that the court incorrectly based its imposition of aggravating factor three on her diagnoses of

_____

[4]  Defendant was paroled on June 15, 2022, after the submission of her merits briefs.  Defendant's release does not render the present appeal moot, as the duration of defendant's parole and her term of imprisonment should she violate parole are limited by the sentence imposed by the court.  See N.J.S.A. 30:4-123.65; State v. Ryan, 86 N.J. 1, 6 n.3 (1981); State v. Levine, 253 N.J. Super. 149, 156 n.2 (App. Div. 1992).

(PTSD), cannabis use disorder, and ADHD, and its conclusion that her "treatment has not yet matured." She contends that those facts do not demonstrate that she will drive while impaired again, and that the court ignored that she has not driven at all since the night of her offense. Further, defendant claims that the court's application of aggravating factor three was inconsistent with its application of mitigating factor seven, relying on State v. Case, 220 N.J. 49, 67 (2014).

Next, defendant argues the court erred by applying aggravating factor nine. She maintains that general deterrence has "relatively insignificant penal value in the weighing and balancing process" and that a need for specific deterrence is inconsistent with her lack of a prior criminal record. Finally, defendant contends the court improperly eliminated three mitigating factors it previously found applicable, despite that fact that at the time she stood before the court at resentencing "she . . . had only positive reports since her incarceration."

We agree with defendant that the court's sentencing decision, and particularly its addition of aggravating factor three and retraction of mitigating factors eight, nine and ten, was an abuse of discretion as its findings were not supported by competent and credible evidence in the record.

A-2557-21

Our review of a sentence is limited and subject to an abuse of discretion standard. State v. Jones, 232 N.J. 308, 318 (2018). "[A]ppellate courts are cautioned not to substitute their judgment for those of our sentencing courts." Case, 220 N.J. 49 at 65 (citing State v. Lawless, 214 N.J. 594, 606 (2013)). We therefore affirm a sentence "unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Of course, deferential review of a sentence "presupposes and depends upon the proper application of sentencing considerations." State v. Melvin, 248 N.J. 321, 341 (2021) (quoting Case, 220 N.J. at 65); accord State v. Trinidad, 241 N.J. 425, 453 (2020). Further, as we recently observed, "[w]hen an appellate court orders a resentencing, a defendant is ordinarily entitled to a full rehearing." State v. Bellamy, 468 N.J. Super. 29, 39 (App. Div. 2021) (citing Case, 220 N.J. at 70). "The resentencing judge must 'view [the] defendant as he stands before the court on that day unless the remand order specifies a different

and more limited resentencing proceeding . . . .'" Id. at 39-40 (quoting State v. Randolph, 210 N.J. 330, 354 (2012)).

A court's findings regarding aggravating factor three "should . . . 'include an evaluation and judgment about the individual in light of his or her [criminal] history.'" State v. Locane, 454 N.J. Super. 98, 125 (App. Div. 2018) (quoting State v. Thomas, 188 N.J. 137, 153 (2006)). In that analysis "[a] defendant's claims about rehabilitation have to be weighed against the criminal history, and include, when possible, objective information in the record such as the offense circumstances." Ibid. Examples of circumstances that have justified application of aggravating factor three include a "substantial level of intoxication" at the time of a vehicular homicide offense and possession of a quantity of drugs exceeding the amount necessary for conviction. Ibid. (citing Thomas, 188 N.J. at 153; State v. Varona, 242 N.J. Super. 474, 491 (App. Div. 1990)).

We initially observe that the court's sentencing decision appears animated by a preconceived notion of the proper sentence for defendant's offense rather than a new reflection on a "full rehearing" and evaluation of defendant "as [s]he st[ood] before the court." Bellamy, 468 N.J. Super. at 39-40. Although we acknowledge that sentencing requires a qualitative assessment of aggravating and mitigating factors, Case, 220 N.J. at 65, it is difficult to comprehend how

an objective analysis, as informed by the current record, could result in the same sentence three times, and by way of different combinations of the sentencing factors. Our conclusion is bolstered further by the court's apparent refusal to credit defendant's rehabilitative progress during the two years between her offense and most recent sentencing hearing, its comments at defendant's second sentencing hearing expressing "doubt" regarding its prior sentencing findings while refusing to make any adjustments, and its imposition of aggravating factor three only at defendant's most recent sentencing hearing despite a lack of new information indicating an increased risk of re-offense.

At bottom, we conclude the record does not support the court's application of aggravating factor three. Defendant had no prior criminal history and demonstrated meaningful progress towards rehabilitation. She voluntarily began seeing a psychiatrist immediately after the accident, as she recognized her need to "become a better person" to ensure that "something like this never . . . happens again." She also explained that she ceased driving voluntarily and enrolled in "every course [she] could" while incarcerated.

In addition, the court's reasoning in applying aggravating factor three failed to consider all pertinent facts and relied upon others not in the record. The court found the aggravating factor applicable based on defendant's "ADHD

and [PTSD]," which it found had "not been addressed," and that "defendant's treatment ha[d] not yet matured." In doing so, the court imported a medical conclusion unsupported by the record and ignored positive steps defendant took towards rehabilitation.

First, Dr. Memon's report did not indicate that defendant failed to address her PTSD. To the contrary, the report stated that defendant was treating her PTSD through therapy. Dr. Memon also reported that after the accident but prior to her incarceration, defendant had taken medication consistently and attended therapy "instead of using cannabis," which he concluded was "a positive indicator that [she] [was] making efforts to maintain her long-term sobriety."

Second, Dr. Memon explained he had not treated defendant's ADHD because she was not driving, and that treatment might be appropriate if she drives in the future. He concluded, however, that defendant did "not present a risk to herself or others," and there is no indication in the record that defendant's untreated ADHD would present a risk of re-offense.

Third, we agree with defendant that the court failed to explain the basis for applying both aggravating factor three and mitigating factor seven, as required by Case, 220 N.J. at 67. The court did not attempt to reconcile those factors and as noted, we find the record did not support application of

aggravating factor three, especially in light of defendant's lack of a criminal history. In sum, we find insufficient support in the record for application of aggravating factor three under the facts presented, where defendant has indisputably committed herself to and made meaningful progress towards rehabilitation. See Case, 220 N.J. at 64 ("Speculation and suspicion must not infect the sentencing process . . . .").

Similarly, the court's withdrawal of mitigating factor ten due to its uncertainty as to "how well she'll do on probation" is unsupported by the record. Defendant's consistent efforts toward rehabilitation, along with her lack of any criminal history, amply supported a finding that she was "particularly likely to respond affirmatively to probationary treatment." In this regard, Dr. Memon stated in his report that he did "not believe that incarceration . . . [would] serve any purpose." Rather, he concluded, "it could limit the progress she has made and continues to make."

We also decline to defer to the court's decision regarding mitigating factors eight and nine because it relied on the same reasoning that supported its application of aggravating factor three. In declining to apply mitigating factors eight and nine, the court placed particular emphasis on defendant's "unresolved ADHD and [PTSD]." As noted, the court seemingly failed to appreciate that

18

defendant was treating her PTSD and that nothing in the record suggested her ADHD posed a risk of re-offense.

We acknowledge that defendant's statement that she did not "belong in jail" certainly supported a finding that she may not have internalized the significance of her offense. We express our reservations, however, with respect to the court's finding that this statement supported its rejection of mitigating factors eight and nine. Bearing in mind the deference owed to the court's factual findings, we cannot discern from the record if the court adequately considered the entirety of defendant's statements.

For example, the court appeared to focus primarily, if not exclusively, on defendant's statements at her second sentencing hearing regarding the negative effects the accident had on her life. At that hearing, however, defendant also reflected on the harm she caused to the victim and his family and explained that she wrote an apology to the victim's family and was "terribly sorry" and "ashamed" of her actions. At defendant's first sentencing, she also acknowledged that her actions were "extremely wrong" and that she "needed to change." She again recognized the harm she caused to the victim and his family and explained that she prayed for them every day. Similarly, at her most recent sentencing hearing, defendant took responsibility for her actions and explained

19

that she was utilizing her time in prison to focus on becoming a better person. We therefore direct the court on remand to consider the entirety of the record, including all three of defendant's statements, when it evaluates anew the sentencing factors.

In reaching our decision, we also recognize the court's analysis of the aggravating and mitigating factors properly considered defendant's admission that she was impaired at the time of the accident. We observe, however, that the record in support of that concession was modest, which the court acknowledged when it stated, "defendant had marijuana in her system, but the effect of the marijuana is not clear to the [c]ourt." The reason the effect of defendant's two "hits" of marijuana was not clear to the court is likely because, in addition to the lack of observational evidence at the scene, THC blood levels are generally considered a poor indicator of impairment according to published research. See Andrea Roth, The Uneasy Case for Marijuana as Chemical Impairment Under a Science-Based Jurisprudence of Dangerousness, 103 Calif. L. Rev. 841, 887 (2015) ("[T]here is simply no predictable or uniform connection between specific blood levels of THC and its metabolites and the[] psychoactive effects."); see also State v. Fraser, 509 P.3d 282, 289-91 (Wash. 2022) (discussing the poor correlation between THC blood levels and impairment

effects). Further, "THC's metabolites . . . can be found in one's blood for days, weeks, or even over a month in chronic users." Roth, 103 Calif. L. Rev. at 885. We note the level of THC in defendant's blood fell under the five nanogram per se limit imposed by some states. See, e.g., Mont. Code Ann. § 61-8-1002(1)(d); Wash. Rev. Code Ann. § 46.61.502(1)(b).

In sum, we are satisfied that the court's analysis of the aggravating and mitigating factors was not adequately supported by the record and resentencing is required. Bolvito, 217 N.J. at 228. We accordingly vacate defendant's sentence and order a new sentencing hearing to be conducted within thirty days. We also direct a new judge conduct that proceeding to ensure the matter is resolved consistent with our opinion and the Code of Criminal Justice. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION